Harold W. Holcombe and Jeanne A. Holcombe v. Commissioner.
Holcombe v. Commissioner
Docket No. 75036.
United States Tax Court
T.C. Memo 1961-233; 1961 Tax Ct. Memo LEXIS 115; 20 T.C.M. (CCH) 1148; T.C.M. (RIA) 61233; August 18, 1961
*115 Joseph F. Rogers, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: In this proceeding deficiencies in income tax and additions to tax were determined as follows: Additions to
Taxable
Tax Sec. 293(b),
Year
Income Tax
I.R.C. 1939
1948
$20,149.82
$10,074.91 Although petitioners' counsel was present, he refused to participate in the proceedings and no evidence was produced on petitioners' behalf. Petitioners filed a final joint income tax return for 1948 with the collector of internal revenue for the second district of New York. Petitioner Harold Holcombe, hereinafter called petitioner, was a sales executive and reported $47,500 in total wages received from the Baird Rubber & Trading Co., Inc. Petitioners reported net taxable income of $9,550.94. They reported a loss from business of $38,892.71. Respondent determined that in place of the loss of $38,892.71 claimed by petitioners, there was a net profit from business of $9,899.52. The increase in income of $48,792.23 was based upon the profits realized by petitioner upon a number of sales of rubber, the proceeds of which he failed to report in his return. Unreported *116 income was realized by petitioner upon sales of crude rubber during 1948. Petitioner was executive vice president of the Baird Rubber & Trading Co., Inc. He had crude rubber of his own for sale. The corporation did not wish him to sell for his account to its regular customers. Petitioner sold the rubber in a series of transactions, hereinafter referred to as the Goodyear Tire transactions, the Cooper Tire transactions, and the Lee Rubber & Tire transactions. In the Goodyear Tire transactions a total of 213 tons of crude rubber was purchased by petitioner at a total cost of $64,155.94 and sold through Baird Rubber & Trading Co., Inc., which acted as agent for petitioner. The Baird Rubber & Trading Co., Inc., paid petitioner $83,443.55 and petitioner realized in the said transactions a profit of $19,287.61. The 213 tons of rubber were charged to the Goodyear Tire Company and the profit on the transaction in the amount of $19,287.61 was not reported on the petitioners' tax return. The profit of $19,287.61 was realized by petitioner in the form of original checks of Baird Rubber & Trading Co., Inc., and deposited to petitioner's account at the Industrial Bank of Commerce. In the *117 Cooper Tire transactions, petitioner sold 76 tons of rubber directly to the Cooper Tire & Rubber Company. The total proceeds of the sale of 76 tons was $32,748.80. The total purchase price was $23,560.47, resulting in a net profit of $9,188.33 realized by petitioner, which amount he failed to report on his income tax return. Petitioner realized $20,316.29 in unreported net profit from the so-called Lee Rubber & Tire transactions. The sales to the Lee Rubber & Tire Company and one additional sale to Baird Rubber & Trading Co., Inc., were made through the firm of Herron & Meyer, which acted as principal and agent for petitioner. The rubber was paid for by Herron & Meyer and sold for the account of petitioner, but the transactions were arranged by petitioner, and Herron & Meyer received only commissions thereon, which were deducted from the net proceeds of each transaction, petitioner receiving the profit after allowance for all costs therefrom. The total unreported income realized on the foregoing transactions was: Goodyear Tire transactions
$19,287.61
Cooper Tire transactions
9,188.33
Lee Rubber & Tire transactions
20,316.29
Total unreported income
$48,792.23
*118 Nowhere on either his tentative or final income tax return did petitioner report any of the said income in the amount of $48,792.23, nor did he indicate in his income tax return that he was a trader in rubber for his own account, or that he engaged in any of these transactions. The petitioners' final return was prepared by Maurice J. McCarthy, Jr., an attorney who was admitted to practice in the Treasury Department. He had prepared petitioners' returns for about 10 years prior thereto. McCarthy executed an affidavit, sworn to on June 15, 1954, in which he stated in part: That the information for the preparation of the returns was given to me by Harold Holcombe or he advised me where such information could be obtained. The information relative to stock brokerage accounts and deductions for interest was obtained by me from persons or firms with whom Mr. Holcombe transacted business. In addition, certain records were supplied by Mr. Holcombe from which various deductions in connection with boat operations and other business transactions were obtained. That I did not audit the books of Mr. Holcombe nor did I verify the information given to me since I took these records as presented *119 to me by Mr. Holcombe and assumed that they were correct. Additional information was secured from personal conversations with Mr. Holcombe. That after the returns were prepared, with one exception they were either sent by hand to Mr. Holcombe or sent by mail with instructions for signing and filing. That I had no knowledge of any other business transactions in which Mr. Holcombe was involved other than those reported on the tax returns. That I make this statement with the written authority of Harold W. Holcombe and without threats or rewards or promises of rewards having been made to me in return for it. /s/ Maurice J. McCarthy, Jr. Criminal prosecution was initiated against petitioner, Harold W. Holcombe, on charges of filing a false and fraudulent return for 1948. Petitioner pleaded "Nolo Contendere." Upon his plea petitioner was convicted of the offense of wilfully and knowingly attempting to evade a part of the income tax due and owing by him for 1948 and was found guilty as charged and convicted. Petitioner understated his net income for 1948 by $48,792.23. A part of the deficiency is due to fraud with intent to evade tax. Of course, petitioner failed to sustain *120 his burden as to the deficiency in tax, which must be approved. Although respondent had the burden of proof as to fraud, we are satisfied from the evidence that petitioner substantially understated his net income in respect to at least three separate transactions. Not only did his return fail to report income "unquestionably received," but a deduction taken for a loss from business, which was not suffered, was of such large proportions that petitioner's gross income from other sources was substantially offset. These understatements of income and overstatements of deduction were of such a nature and of such importance that they could not have been due to mere oversight or even neglect. We have accordingly found that at least a part of the deficiency was due to fraud with intent to evade tax. Frank A. Weinstein, 33 B.T.A. 105 (1935); M. Rea Gano, 19 B.T.A. 518 (1930). Decision will be entered for the respondent.